IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| M. SCOTT BARRETT,<br><br>        Plaintiff,<br><br>vs.<br><br>THOMAS D. REYNOLDS, and EARLY AMERICAN COIN GALLERY, LLC,<br><br>        Defendants. | CASE NO. 8:12CV328<br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Plaintiff's Motion for Preliminary Injunction (Filing No. 22) and Motion for Temporary Restraining Order ("TRO") (Filing No. 36.) Having considered the parties' briefs, evidence, and arguments heard on November 14, 2012, the Court will grant the Plaintiff's Motions, in part.

## BACKGROUND

Plaintiff M. Scott Barrett and Defendant Thomas D. Reynolds are both rare coin collectors. In addition to collecting coins, Reynolds also acts as a coin dealer. He is the sole owner of Defendant Early American Coin Gallery, LLC. Prior to the dispute giving rise to this litigation, Barrett and Reynolds had been personally acquainted with each other for more than twenty years, and were good friends. (Filing No. 23-1, Decl. of M. Scott Barrett, at ¶ 2.)

In April 2009, Reynolds tendered a $35,475.00 check to purchase coins at an Early American Coppers, Inc. ("EAC"),[1] annual coin auction. (*Id.* at ¶ 4.) That check was returned marked "Insufficient Funds." (*Id.*) As a result, the EAC suspended Reynolds's right to bid at annual EAC auctions for his own account. (*Id.*) At the May

---

[1] The "EAC is a not-for-profit numismatic specialty organization founded in 1967 to serve as a point of contact for collectors of early U.S. copper coins[.]" (*Id.* at ¶ 3.)

2011 annual EAC meeting, the EAC decided to continue Reynolds's suspension.  (*Id.*) Barrett believed that Reynolds had only committed an honest mistake.  (*Id.*)

On March 31, 2012, Reynolds and Barrett entered into a consignment contract (the "Contract").  (Filing No. 21-2.)  The Contract states, in pertinent part:

> 3.  *Consignment invoices*.  Barrett shall provide Reynolds with a list of selling prices for each coin listed in Exhibit "A."
>
> 4.  *Acceptance of Possession and Sale*.  Reynolds shall accept possession of the coins on consignment and shall sell the coins for Barrett's account at the selling prices that Barrett has listed on Exhibit "A" or at such other amounts as Barrett may establish or authorize from time to time. . . .
>
> 7.  *Sales*.  Reynolds shall undertake sales on credit only to customers judged by Reynolds to be good credit risks.  Unless otherwise agreed, Reynolds will make sales on credit only if the entire amount of credit sale is to be paid in three or less monthly installments.  Reynolds shall not be entitled to any compensation under paragraph 8 of this agreement until all installment payments have been received in full. . . .
>
> 9.  *Risk of Loss*.  Reynolds shall assume all risk of loss for damage to or destruction of the consigned coins from any cause whatsoever from the time Reynolds receives possession of the coins until sale and delivery to a customer or until return to Barrett. . . .
>
> 11.  *Records*.  Reynolds shall keep accurate records showing
>
> (a) all coins received from Barrett on consignment with the agreed selling price;
>
> (b) all sales to customers with the names, addresses, and telephone numbers of the customers, coins purchased, and the terms of the sale;
>
> (c) all consigned coins remaining on hand;
>
> (d) all coins returned by or repossessed from customers together with credits allowed; and
>
> (e) all coins returned to Barrett and resulting credits.

Reynolds shall allow Barrett . . . to have access to the records on demand and . . . shall permit Barrett . . . to inventory the consigned coins in Reynolds's possession.

12. *Separate Bank Account; No Commingling of Funds.*

(a) Reynolds shall establish an escrow or trust account at a commercial bank . . . into which Reynolds shall deposit the proceeds of all coins sold subject to this agreement. . . .

(b) Reynolds represents and warrants that he will hold the proceeds of all coins sold subject [to] this agreement in trust for the benefit of Barrett; subject only to his right to compensation due him under paragraph 8 of this agreement. Reynolds further represents and warrants that he will not commingle any of the proceeds of coins sold subject to this agreement with any other funds or bank accounts of Reynolds.

13. *Accounting and Remittance.* Reynolds shall render to Barrett not later than the 15th day of each month an accurate, detailed account of all sales of coins made from the consigned coins during the previous month, together with returns and repossessions, if any. Simultaneously with the accounting, Reynolds shall remit to Barrett a sum equal to the agreed selling price, less compensation due Reynolds under paragraph 8 of this agreement. . . .

15. *Term.* . . .

(b) Barrett may terminate this Agreement at any time by giving notice to Reynolds. Once Barrett gives notice of termination, Reynolds shall, within seven (7) days, return to Barrett all consigned coins remaining unsold and shall account for and remit to Barrett all proceeds due and remaining unpaid.

16. *Notices.* Any communications made in connection with this Agreement shall be deemed to have been made when sent by registered or certified mail (postage prepaid, return receipt requested), or overnight delivery or delivered in person, to the parties hereto at the addresses listed in this paragraph.

17. *Controlling Law.* The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the State of Indiana.

(*Id.* at ¶¶ 3, 4, 7, 9, 11, 12, 13, 15, 16, 17.)  Prior to entering into the Contract, Barrett and Reynolds agreed to the prices at which Reynolds would sell the coins that became subject to the Contract.  (*See* Filing No. 43, Aff. of Thomas D. Reynolds, at ¶¶ 6-7.)

Sometime prior to May 26, 2012, Reynolds had sold some of the coins Barrett consigned to him.  On or about May 26, 2012, Barrett learned that Reynolds had commingled proceeds from the sale of consigned coins with money in Reynolds's general bank account.  (Filing No. 38-1, Supplemental Decl. of M. Scott Barrett, at ¶ 7.)

On or about September 6, 2012, Barrett notified Reynolds in accordance with the Contract that he was terminating the Contract.  (*Id.* at ¶ 8.)   On or about September 13, 2012, Reynolds met with Barrett and returned at least some of the unsold consigned coins to Barrett.  Reynolds contends he returned all the coins he had in his possession or control to Barrett on that date.  (*See* Filing No. 43, at ¶12.)  He maintains that he no longer has any of the consigned coins because, with the exception of one coin which Reynolds represents is missing but was probably sold prior to the termination of the Contract, he either sold them during the term of the Contract or returned them to Barrett upon the termination of the Contract.

Barrett alleges that Reynolds refused to return a total of forty-four consigned coins; he asserts that those coins were "'sold' to *faux* collectors."  (Filing No. 38-1, at ¶ 9.)  He claims, and Reynolds does not seem to dispute, that Reynolds has failed to provide an accounting containing the names, addresses, and telephone numbers for those *faux* collectors.  (*See id.* at ¶ 10.)  Furthermore, Barrett alleges that since filing his Amended Complaint, he has received information that reflects Reynolds has continued to sell Barrett's coins despite the termination of the Contract.  (*See id.* at ¶¶ 13-15, 18.)

4

Barrett asserts seven causes of action against the Defendants in his Amended Complaint: (1) replevin, (2) breach of fiduciary duty, (3) breach of contract, (4) unjust enrichment, (5) conversion, (6) negligence, (7) "action sounding in injunctive relief." He acknowledges that his unjust enrichment and negligence claims "are money oriented," and thus, does not address those claims when briefing his Motions. (Filing No. 37 at CM/ECF p. 11 n. 3.) In his Motions, Barrett seeks an order directing Defendants to immediately: (1) cease and desist selling, transferring, or otherwise alienating Barrett's coins; (2) return to Barrett all coins consigned to Defendants that are in Defendants' possession or control; (3) pay Barrett, or place into escrow, the proceeds Reynolds received for any of the consigned coins Defendants sold; and (4) provide Barrett with an accounting of the location of every coin Barrett consigned to Defendants that has been transferred or resold. On November 12, 2012, Reynolds filed his Answer to Amended Complaint and Counterclaims (Filing No. 40), asserting counterclaims against Barrett for defamation and tortious interference with business relationships.

## STANDARD

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), when determining whether to issue a TRO or preliminary injunction. *See McCrary v. Stifel, Nicolaus & Co.*, Inc., 687 F.3d 1052, 1060 (8th Cir. 2012); *S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (approving the district court's use of *Dataphase* factors for analyzing a motion for a TRO). Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability

5

that movant will succeed on the merits; and (4) the public interest." *Dataphase*, 640 F.2d at 114. "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). The movant bears the burden of establishing the propriety of the injunction. *See Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011).

Barrett has addressed all four *Dataphase* factors. Reynolds limits his opposition to the "threat of irreparable harm" factor. As a matter of completeness, the Court will address each of the four *Dataphase* factors.

**I. Threat of Irreparable Harm**

"[A] party moving for a preliminary injunction is required to show the threat of irreparable harm." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). "'Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages.'" *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). "Conversely, where the movant has an adequate legal remedy, a preliminary injunction will not issue." *Branstad v. Glickman*, 118 F. Supp. 2d 925, 942 (N.D. Iowa 2000) (citing *Frank B. Hall & Co. v. Alexander & Alexander, Inc.*, 974 F.2d 1020, 1025 (8th Cir. 1992)); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("When there is an adequate remedy at law, a preliminary injunction is not appropriate.") However, "[e]ven if a loss is fully compensable by an award of money damages, . . . extraordinary circumstances, such as a risk that the defendant will become insolvent before a judgment can be collected, may give rise to the irreparable harm necessary for a

6

preliminary injunction." 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 2011); *see also MeccaTech, Inc. v. Kiser*, No. 8:05CV570, 2008 WL 1774992, at *6 (D. Neb. Apr. 15, 2008) (citing *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 290 (1940)) ("The United States Supreme Court has determined that an injunction is reasonable to preserve the status quo pending determination of a lawsuit when the Defendant is insolvent and its assets are in danger of dissipation or depletion.").

Barrett contends there is a threat of irreparable harm if no injunction is issued because a monetary award cannot be adequate compensation for goods that are unique in character or have special characteristics, such as the coins at issue. Barrett cites to cases he contends stand for the proposition that monetary damages are inadequate when the movant seeks to obtain unique, rare, and/or irreplaceable property by virtue of injunctive relief. *See Robins v. Zwirner*, 713 F. Supp. 2d 367, 374 (S.D.N.Y. 2010); *King Aerospace Commercial Corp., Inc. v. Al-Anwa Aviation, Inc.*, No. CIV A 308-CV-0999-L, 2008 WL 2676362, *6 (N.D. Tex. July 9, 2008). Reynolds contends that there is no threat of irreparable harm here because Barrett's sole remedy is money damages. Reynolds asserts that Barrett's sole remedy is money damages because he no longer retains the coins consigned to him.

The circumstances of this case do not indicate a threat of irreparable harm based on the rare and unique nature of the coins. Although the coins may be rare and unique, Barrett entered into the Contract with Reynolds because he was willing to part with the coins in exchange for money. Other circumstances, however, lead the Court to believe there is a threat of irreparable harm in this case. Barrett has pointed to evidence

7

indicating that on at least one occasion, Reynolds wrote a check despite having insufficient funds in his checking account to satisfy the payment. Furthermore, Reynolds has failed to provide Barrett with an accounting of the forty-four coins allegedly sold to *faux* collectors, and acknowledges that he has commingled proceeds from the sale of the consigned coins with his own personal funds, both in violation of the Contract. Based on these circumstances, it is not unreasonable to believe that Reynolds may become judgment proof prior to the time Barrett could collect on a judgment if one ultimately is rendered in his favor. Therefore, the Court finds that there is a threat of irreparable harm in this case.

## II. Likelihood of Success on the Merit[2]

When examining the movant's likelihood of success on the merits, the question is not "whether the movant for a preliminary injunction will ultimately win." *Uncle B's Bakery, Inc. v. O'Rourke*, 920 F. Supp. 1405, 1424 (N.D. Iowa 1996) (citing *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir.1991); *O'Connor v. Peru State College*, 728 F.2d 1001, 1002 (8th Cir.1984)). Rather, "[l]ikelihood of success on the merits requires that the movant find support for its position in governing law." *Prudential Ins. Co. of Am. v. Inlay*, 728 F. Supp. 2d 1022, 1029 (N.D. Iowa 2010). Furthermore, "[i]n isolation, the likelihood of success on the merits is meaningless," and "[t]herefore, the court must consider other factors, especially the threat of irreparable harm." *Uncle B's Bakery*, 920 F. Supp. at 1424 (citing *Glenwood Bridge*, 940 F.2d at 371).

---

[2] As noted above, the Contract contains a choice of law provision in which the parties agreed that Indiana law would apply, at least with respect to the Contract's "validity, interpretation, and performance." (Filing No. 21-2 at ¶ 17.) In his support briefs, Barrett addresses each of his claims under Indiana law. Reynolds does not dispute that Indiana law applies to Barrett's claims. For purposes of the present Motions, the Court will assume that Indiana law applies to Barrett's claims.

Barrett contends that he has shown a likelihood of success on the merits of his claims for breach of fiduciary duty, breach of contract, and conversion.  Under Indiana law, Barrett is required to prove three elements to support his claim for breach of fiduciary duty: "(1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary."  *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010).  To establish his claim for breach of contract, he will be required to show "'the existence of a contract, the defendant's breach thereof, and damages.'" *Corry v. Jahn*, 972 N.E.2d 907, 913 (Ind. Ct. App. 2012) (quoting *Haegert v. Univ. of Evansville,* 955 N.E.2d 753, 758 (Ind. Ct. App. 2011)).  Finally, to establish his claim for conversion, he "must establish the appropriation of personal property by another for that party's own use and benefit in exclusion and defiance of the owner's rights."  *Shourek v. Stirling*, 621 N.E.2d 1107, 1109 (Ind. 1993).

Keeping in mind the threat of irreparable harm present in this case, Barrett has made a sufficient showing of a "likelihood of success on the merits."  There appears to be no dispute that the Contract is valid, and the terms of the Contract require Reynolds to, among other things, take possession of the coins and sell them, holding the proceeds of the sales of the coins in trust for Barrett's benefit; provide a detailed accounting of all sales made pursuant to the Contract; and not commingle those proceeds with Reynolds's personal funds.  Furthermore, Barrett has pointed to evidence indicating that Reynolds breached these obligations, and may have misappropriated coins and sold them for his own benefit.  Therefore, the "likelihood of success" *Dataphase* factor supports the issuance of an injunction.

9

### III. Balance of Hardships

The balance of harms here weighs in favor of Barrett. As noted previously, he faces a threat of irreparable harm if an injunction is not granted. In contrast, the harm Reynolds indicates he might suffer is a possibility of being subject to contempt proceedings anytime a third party sells or attempts to sell one of the consigned coins that Reynolds alleges he sold prior to the termination of the Contract. It seems, however, that this concern could be alleviated, or at least reduced, by providing Barrett an accounting of the transactions which Reynolds contends were arms-length transactions carried out prior to the termination of the Contract, but which Barrett believes were "sham" transactions. *Cf. Prudential Ins. Co.*, 728 F. Supp. 2d at 1031 ("Another consideration in the balance of harms calculus is whether the defendant has already voluntarily taken remedial action."). Therefore, the Court finds that the "balance of hardships" factor weighs in favor of Barrett.

### IV. Public Interest

"The public has a strong interest in ensuring that defendants do not fraudulently or otherwise transfer assets during litigation to circumvent recovery by a wronged plaintiff." *MeccaTech*, 2008 WL 934366, at *4. Reynolds does not dispute that he has commingled proceeds from the sale of the consigned coins with his personal funds, and the Contract contains a provision that prohibits him from doing so. Although Reynolds contends that he no longer has possession or control of any of the consigned coins, an injunction that prevents him from retaining possession or control of any of the consigned coins and from commingling the proceeds from the sale of the consigned coins with his personal funds would serve the public's interest of ensuring that "defendants do not . . .

transfer assets during litigation to circumvent recovery by a wronged plaintiff." *MeccaTech*, 2008 WL 934366, at *4. Therefore, the Court finds that the "public interest" factor weighs in favor of an injunction.

## CONCLUSION

Based on an analysis of the *Dataphase* factors, the Court finds that a preliminary injunction is warranted in this case. Accordingly,

IT IS ORDERED that the Plaintiff's Motion for Preliminary Injunction (Filing No. 22) and Motion for Temporary Restraining Order (Filing No. 36) are granted, in part, as follows:

1. Defendants are prohibited from retaining possession or control of any of the coins subject to the consignment contract entered into between the Plaintiff and Defendants, and must return immediately to Barrett's attorneys any coins that remain in his possession or control;

2. Within ten (10) days of this Order, the Defendants must provide Plaintiff a detailed accounting of all of the sales of the coins subject to the consignment contract entered into between the Plaintiff and the Defendants, which shall, at a minimum, consist of, with respect to each coin sold:

    a. The purchaser's full name and address;

    b. The date of the sale;

    c. The coin's purchase price; and

    d. The terms of the sale;

3. The Defendants must identify the escrow or trust account established for purposes of holding the sale proceeds of the coins subject to said consignment

contract under the consignment contract entered into between the Plaintiff and the Defendants; and

4. The Defendants are prohibited from commingling the proceeds from the sale of the coins subject to the consignment contract entered into between the Plaintiff and the Defendants with any of the Defendants' other funds.

Dated this 15th day of November, 2012.

                BY THE COURT:

                s/Laurie Smith Camp
                Chief United States District Judge